IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION



United States Courts
Southern District of Texas
FILED

MAR 2 5 2005

Michael N. Milby, Clerk

| | | |
|---|---|---|
| JULIE TREASURE | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | |
| | § | CIVIL ACTION NO. H-04-4781 |
| | § | |
| BEST STORAGE WEST HOUSTON, LP | § | |
| and ROBIN PARSLEY, personally | § | |
| | § | |
| **Defendants.** | § | |

## <u>JOINT TIMELINE OF EVENTS SUBMITTED<br>BY PLAINTIFF AND DEFENDANTS</u>

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

COME NOW, Plaintiff Julie Treasure ("Ms. Treasure") and Defendants Robin

Parsley ("Mr. Parsley") and Best Storage West Houston, L.P. ("Best Storage West") in

the above referenced cause of action and file this Joint Timeline of Events pursuant to

this Court's Order on March 22, 2005. The following timeline contains events that both

party are aware of and agree to at this date:

Julie Treasure -- Plaintiff
Robin Parsley -- Best Storage
Barbara Green -- Best Storage
Steve Huckaby -- Best Storage
Scott Chandler -- Best Storage

(1).    **December 26, 2002**:        Ms.  Treasure  started  training  work  with  Best

Storage in Alvin, Texas.

1

(2).     **January 4, 2003**:     Ms. Treasure began employment position with Best Storage West Houston, L.P. at the Katy store.

(3).     **January 31, 2003**:     Ms. Treasure received a "disciplinary warning" for "loosing her composure during stressful events and hollering in front of customers and at co-workers."   It also stated that the next step for repeated infractions could result in discipline up to termination.

(4).     **March 7, 2003**:     Ms. Treasure's immediate supervisor sent a fax to the employees at Best Storage West Houston indicating that he "is very proud of the progress of the team" and that the team had exceeded the company's goals in February.

(5).     **March 28, 2003**:     Ms. Treasure's performance evaluation was generally positive, noting that Ms. Treasure "stays under control in tough situations" and that "overall we are happy with Julie's job."   Specifically, regarding the January 31, 2003 incident, the evaluation noted Julie "had problems with corporate early on . . . things are better now."

(6).     **April 1, 2003**:     Ms. Treasure filed a complaint with the Department of Labor ("DOL").   Defendants assert that they have never seen or had any knowledge of this complaint until the afternoon of March 24, 2005, when the complaint was served upon them by Plaintiff.   This written complaint did not allege retaliation.

(7).    **April 7, 2003**:        Ms. Treasure authorized the Wage and Hour Division of the DOL to use her name and the information in her statement to the extent necessary to enforce her rights under the Acts administered by the Division negotiations with Best Storage West Houston.   Defendants assert that they have never seen or had any knowledge of this complaint until the afternoon of March 24, 2005, when it was served upon them by Plaintiff.

(8).    **April 21, 2003**:      A company memo written to Ms. Treasure stated that she received a two and a half month bonus even though, according to Best Storage, she did not meet the bonus quota program.   The bonus was given because she had excelled in other areas of the quotas.

(9).    **April 27, 2003**:      Ms. Treasure verbally complained that if she had to work several hours each week that were unpaid by doing bank runs after work and during lunch, then she should have been able to get time off work for a non-business related back injury.   Barbara, her immediate supervisor, had informed her she would not be paid for the extra hours she claimed to have worked.

(10).   **April 28, 2003**:      Ms. Treasure sent a fax to Barbara Green, her immediate supervisor, stating "I don't understand why I have to make up my time or be docked for 1.5 hours on May 1 or May 6, as I am not paid for 2.5 hours a week." Ms. Treasure also wrote a small hand written note that stated that she had spoken (a month and a half previously) with the DOL.   She stated that she was told by the DOL that she was a non-

3

exempt employee.  She also said that she had an appointment to speak with an attorney.
Ms. Green then sent a fax to Scott Chandler in the corporate office letting him know that
Ms. Treasure did not understand why she was docked for 8 hours when she worked 8.5
unpaid hours.

(11).   **April 29, 2003**:      Ms. Treasure called Robin. Parsley about her wage
concerns.  Mr. Parsley requested that Ms. Treasure produce a note / memo describing her
concerns.

(12).   **April 29, 2003**:      Ms. Treasure sent a type written letter to Mr. Parsley in
which she stated she had spoken with the DOL and was making an appointment with an
attorney.  Ms. Treasure stated that she was told by the DOL that she was a non-exempt
employee.  Additionally, she told Mr. Parsley that Barbara, her immediate supervisor,
informed her, among other things, that "[she] would not be paid for [her] time from 8:30
a.m. 9:00 a.m."

(13).   **May 1, 2003**:      A corporate memo was sent out to all "7-Day" Stores
regarding new work hours.  It stated employees could only work 40 hours a week and all
overtime had to be approved by a supervisor.

(14).   **May 1, 2003**:      An audit was accomplished at Ms. Treasure's worksite.
The inspection report alleged several infractions by Ms. Treasure.

(15).   **May 10-11, 2003**:     An audit was accomplished at Ms. Treasure's worksite. The inspection alleged several infractions by Ms. Treasure.

(16).   **May 15, 2003**:     Mr. Chandler e-mailed Ms. Treasure indicating that Best Storage was converting her pay period to a bi-monthly schedule and payroll will be calculated on an hourly basis.

(17).   **May 21, 2003**:     Ms. Treasure complained of not receiving her paycheck on time.   She called the district manager, Steve Huckaby, and complained about not receiving her paycheck.

(18).   **May 22, 2003**:     Barbara Green sent a memo to Best Storage regarding Julie Treasure.   The document indicated Ms. Treasure made a complaint regarding a missing check on the evening of May 21, 2003.

(19).   **June 3, 2003**:     An audit was accomplished at Ms. Treasure's worksite. The inspection report alleged several infractions by Ms. Treasure.   Ms. Treasure received a written reprimand regarding her performance.

(20).   **June 28, 2003**:     Ms. Treasure wrote a memorandum to Scott Chandler indicating she was having problems with her last three paychecks.   She indicated she never had this problem until the middle of May.   She indicated it worried her because the checks were not making it to her home or to her store, Best Store West

Houston.  Best Storage asserts that it timely sent all of Ms. Treasure's paychecks in manner consistent with its normal business practices.

(21).  **July 1, 2003**:        Ms. Treasure's store was audited.  Numerous problems were alleged.  Ms. Treasure was placed on probation.  In response to this evaluation, Ms. Treasure drafted a memorandum in which she addressed issues identified in the audit and made statements such as, "I know you just want to get rid of me."

(22).  **July 2, 2003**:        At 10:55 a.m., Ms. Treasure's memo written on July 1, 2003 was received by fax by Mr. Scott Chandler.  Mr. Chandler called Ms. Treasure to discuss these issues.  Mr. Chandler stated that Ms. Treasure had told him "I know you are just trying to get rid of me, so I am just leaving."  Mr. Chandler, asserted that he told Ms. Treasure: "well then I will accept that as your resignation."  Following this, Mr. Chandler informed corporate headquarters of her resignation and types a memo memorializing his version of the conversation and faxed it back to Ms. Treasures at Ms. Treasure's store. Ms. Treasure disputes that she stated that "she was not happy and wished to discontinue employment with the company" or that Mr. Chandler said "well then I will accept that as your resignation."  Ms. Treasure additionally states she never received this memo.  She agrees that she was not happy with her treatment by the company.

(23).  **July 2, 2003**:        At 2:11 p.m., that same afternoon, Best Storage received a fax notice of investigation from the Wage and Hour Division of the DOL.  Defendants assert that this was the first notice received by Best Storage that the DOL was

investigating Best Storage in relation to Julie Treasure.   This notice informed Best Storage that the DOL was investigating its compliance with the Fair Labor Standards Act of 1938 as amended.

(24).   **July 3, 2003**:        Ms. Treasure returned to the Best Storage store where she worked, and attempted to begin work.  She was prevented from working.  She asserts that she was told she resigned and that the office had her resignation letter.  She stated she had not resigned.   She then wrote a letter to the corporate office stating that she had not resigned and requested a copy of the alleged resignation letter.  Best Storage did not respond to Ms. Treasure's request.

(25).   **July 8, 2003**:        Ms. Treasure filed a complaint with the Texas Workforce Commission for non-payment of wages in the form of bonus and fringe benefits.  This complaint did not allege retaliation.

(26).   **August 6, 2003**:        DOL visited Best Storage.  Thereafter, the DOL made a determination that Best Storage was in fact in error regards to some of its salary calculations as to Mr. Treasure.

(27).   **September 11, 2003**:        Ms. Treasure received and signed for a check for $777.17 for back wages owed by Best Storage.  Ms. Treasure signed a form WH-58 which states "your acceptance of back wages due under the FLSA means you have given up any right you may have to bring suit for such back wages under Section 16(b) of the

Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs."

(28).   **September 18, 2003**:        Texas Workforce Commission dismissed Ms. Treasure's claims for two reasons.   First, her unpaid bonuses were paid after her complaint but before their determination order.   Second, other monies owed (sick time and vacation pay) were found not to be owed under the employer's written policy.   Her appeal to this decision was denied.

(29).   **December 20, 2004**:        Ms. Treasure filed this lawsuit alleging she was retaliated against under Section 15(a)(3) of the FLSA.

8

Respectfully submitted,

O'QUINN LAMINACK & PIRTLE

CHARLES E. SOECHTING
State Bar No. 18821300
STEPHEN R. WALKER
State Bar No. 24034729
440 Louisiana Street, Suite 2300
Houston, Texas  77002
(713) 223-1000 – Telephone
(713) 223-0937 – Facsimile

ATTORNEYS FOR DEFENDANTS
ROBIN PARSLEY AND BEST
STORAGE WEST HOUSTON, L.P.

RASANSKY LAW FIRM

*by permission
S.R. Walker*

JEREMI K. YOUNG
State Bar No. 24013793
JEFFREY H. RASANSKY
State Bar No. 16551150
JESSICA M. DEAN
State Bar No. 24040777
2525 McKinnon, Suite 725
Dallas, Texas  75201
(214) 651-6100 – Telephone
(214) 651-6150 – Facsimile

ATTORNEYS FOR PLAINTIFF
JULIE TREASURE